[635 NYS2d 980]

NEW YORK STATE DEPARTMENT OF TAXATION AND FINANCE, Appellant, v ST. REGIS GROUP (MOHAWK AKWESASNE RESERVATION) et al., Respondents. (Action No. 1.)

NEW YORK STATE DEPARTMENT OF TAXATION AND FINANCE, Appellant, v WAYNE STEHLIN et al., Respondents. (Action No. 2.)

NEW YORK STATE DEPARTMENT OF TAXATION AND FINANCE, Appellant, v ST. REGIS GROUP (HOGANSBURG, N. Y.) et al., Respondents. (Action No. 3.)

Third Department, December 28, 1995

## APPEARANCES OF COUNSEL

*Dennis C. Vacco, Attorney-General,* Albany *(Peter H. Schiff, Victoria A. Graffeo, Lew A. Millenbach* and *Andrew Bing* of counsel), for appellant.

*Pease & Willer,* Massena *(Daniel S. Pease* of counsel), for St. Regis Group, respondent.

*Zdarsky, Sawicki & Agostinelli,* Buffalo *(K. Michael Sawicki* and *Gerald T. Walsh* of counsel), for Wayne Stehlin, respondent.

## OPINION OF THE COURT

YESAWICH JR., J.

Each of these actions arises from the stop and seizure of a tractor-trailer hauling cases of liquor, apparently owned and imported into New York by one or more Native American Indians, and destined for delivery on the Mohawk Akwesasne Reservation in St. Lawrence County. The vehicles involved in action Nos. 1 and 2 were stopped because of a perceived violation of the truck mileage tax provisions *(see,* Tax Law art 21);

the third stop was the product of surveillance conducted by State Police and the State Office of Tax Enforcement after a tax investigator received a tip that a shipment of liquor was being transported to the reservation in a specified trailer. In each instance, the documentation possessed by the driver was found to be inadequate, in that it did not identify a registered liquor distributor as the importer of the cargo, and otherwise failed to meet the requirements of the Tax Law (*see,* Tax Law § 427). The trucks and cargo were seized pursuant to Tax Law § 1845.

Plaintiff then moved in each case for an order confirming the temporary seizure (*see,* Tax Law § 1845 [c]), and commenced separate actions for forfeiture of the liquor (*see,* Tax Law § 1845 [d]). Defendants, St. Regis Group (action Nos. 1 and 3), and Wayne Stehlin and T.N.C. Trading, Inc. (action No. 2), opposed the confirmation motions and moved to dismiss the forfeiture actions, claiming that subject matter jurisdiction was lacking. In turn, plaintiff opposed these motions and, in action No. 1, cross-moved for summary judgment. In action No. 2, Stehlin and T.N.C. Trading cross-moved for dismissal of the complaint in the interest of justice.

Supreme Court issued a joint decision in action Nos. 1 and 2, concluding, *inter alia,* that Federal law preempts State enforcement of the tax laws in question with respect to Indian transactions, and that it therefore had no jurisdiction over these actions. The court dismissed the forfeiture actions and then treated the motions to confirm the temporary seizures as moot (*New York State Dept. of Taxation & Fin. v St. Regis Group,* 161 Misc 2d 383).

Shortly after Supreme Court issued the orders dismissing action Nos. 1 and 2, the United States Supreme Court decided *Department of Taxation & Fin. v Milhelm Attea & Bros.* (512 US —, 114 S Ct 2028 [hereinafter *Milhelm Attea*]), which upheld the constitutionality of a regulatory scheme designed by New York to ensure compliance with its laws requiring that taxes be collected on cigarettes sold, on Indian reservations, to non-Indians. Relying on this new articulation of the scope of Federal preemption in Indian affairs, plaintiff sought reargument of the motions in action Nos. 1 and 2. Reargument was granted but Supreme Court, distinguishing *Milhelm Attea,* adhered to its former decision. The court, citing its previous decisions, thereafter dismissed the complaint in action No. 3. Plaintiff appeals from the orders entered in each of the three actions.

■ Defendants maintain, both on their motions for dismissal—which, technically, raise only the threshhold question of whether State courts have jurisdiction to decide the matters at hand—and in opposition to plaintiff's motions to confirm the temporary seizures, that Federal law preempts New York authorities from enforcing, in Indian country, State tax and regulatory laws via the mechanisms set forth in Tax Law § 1845. This precise argument need not be confronted, for the seizures did not occur in Indian country (*see,* 18 USC § 1151), a fact acknowledged by defendants on oral argument, and because the Federal laws upon which defendants rely—including those governing Federal seizure and enforcement proceedings—are not, by their explicit terms, applicable to the fact patterns presented by these cases. Notably, 18 USC § 1161, the statute that incorporates State law into the Federal scheme of liquor regulation in Indian country, expressly states that "[t]he provisions of sections 1154, 1156, 3113, 3488 and 3669, of this title, shall not apply within any area that is not Indian country"; the listed sections include those which defendants contend demonstrate Congress' intent to vest exclusive jurisdiction over such matters in the Federal Government.

Here, forfeiture is not being sought pursuant to Federal seizure laws, with respect to which the Federal courts do indeed enjoy exclusive jurisdiction (*see,* 28 USC § 1355 [a]), or under any other Federal statute (*cf., Fort Belknap Indian Community v Mazurek,* 43 F3d 428, 436, n 8, *cert denied —* US —, 116 S Ct 49; *compare, Thomas v Best,* 104 AD2d 37, 40); rather, what is being contested is the applicability of State tax and forfeiture laws. Nor is this an instance where jurisdiction is the exclusive province of the tribal courts (*compare, Williams v Lee,* 358 US 217, 223). While questions of Federal preemption and constitutional issues are relevant, and may ultimately prove to be dispositive, there is little doubt that the State courts have jurisdiction to resolve matters akin to those presented herein. In short, we find that Supreme Court has jurisdiction of these actions.

■ We now turn to plaintiff's motions to confirm the temporary seizures, which Supreme Court found were rendered moot by reason of its dismissal of the underlying actions. It is our view that, inasmuch as the record is complete as far as these motions are concerned, and all parties have had an opportunity to be heard with respect thereto, judicial economy is best served by our addressing the questions presented by these motions now (*see, State of New York v General Elec. Co.,* 215

AD2d 928, 929; *Furgang v JMK Bldg. Corp.*, 183 AD2d 1062, 1064, *lv denied* 80 NY2d 756).

■ The overriding question posed is whether there is a "substantial probability that [plaintiff] will prevail on the issue of forfeiture" (Tax Law § 1845 [c]). To answer that question, it is necessary to consider not only whether the pertinent State laws have been violated on their face—they clearly were, and defendants do not contend otherwise—but also whether there is merit to the defenses asserted. As to this last issue, we judge it dubious, at best, that defendants will succeed in demonstrating that Federal law leaves plaintiff devoid of authority to enforce general State laws with respect to cargo seized off Indian reservations but destined for delivery thereon, for, as we have previously noted, the Federal statutes upon which defendants predicate this argument do not apply outside of Indian country.

Moreover, the United States Supreme Court has held that Congress, by the enactment of 18 USC § 1161, intended to delegate a portion of its authority over Indian affairs to the States (*see, Rice v Rehner*, 463 US 713, 730), and has also determined that State laws "apply of their own force to govern tribal liquor transactions" (*supra*, at 726), in addition to having been incorporated into the Federal regulatory scheme (*see*, 18 USC § 1161). In *Fort Belknap Indian Community v Mazurek* (43 F3d 428, *supra*), the Ninth Circuit appositely and convincingly reasoned that the rationale in *Rice v Rehner* (*supra*) leads ineluctably to the conclusion that States are permitted not only to *regulate* liquor distribution, but also to *enforce* those regulations (there, by way of prosecution for criminal violations) (*Fort Belknap Indian Community v Mazurek, supra*, at 434), even on the reservation. It follows, a fortiori, that States may exercise the same, or greater, authority over off-reservation activities (*see, Washington v Confederated Tribes*, 447 US 134, 161-162 [holding that the off-reservation seizure of unstamped cigarettes was an appropriate way for a State to enforce its excise and sales tax laws]; *Kake Vil. v Egan*, 369 US 60, 75).

Defendants argue, further, that even if the Federal Indian liquor laws (*see, e.g.*, 18 USC §§ 1154, 1156, 1161) have been construed so as to allow for State enforcement of regulatory laws governing the sale and consumption of alcoholic beverages (*see, Rice v Rehner, supra; Fort Belknap Indian Community v Mazurek, supra*), the New York statutes implicated here are subject to a different analysis, for they are tax laws

aimed not at regulating the sale and consumption of alcoholic beverages, but at generating revenue. Even assuming this to be so, we cannot subscribe to defendants' view that these laws, which require, among other things, that distributors be registered and that cargo be accompanied by detailed paperwork outlining whether taxes have been paid and if not, why not (*see*, Tax Law §§ 421, 427), run afoul of the Federal Indian Trader Statutes (*see*, 25 USC § 261 *et seq.*), which reserve to the Federal Government the power to regulate trade with Indians.

The statutes in dispute do not require that taxes be collected on liquor that is to be sold to Indians on the reservation. Indeed, they provide a means for the distributor to document that fact as a reason for not having paid the tax (*see*, Tax Law § 424 [1] [f]; § 427 [2] [j] [ii] [C]). As a consequence, the tax itself need be paid only on liquor to be sold to non-Indians. While these laws impose certain regulatory restrictions on Indians and those who trade with them, including the requirement that liquor importers be registered and, as a condition thereof, that they obtain a liquor license (*see*, Tax Law § 421), these regulations are intended to serve State interests similar to, or more compelling than, those upheld in *Milhelm Attea*, and appear to be no more burdensome. Significantly, there is no assurance that a particular importer will sell only to Indians, even if all of the liquor is initially delivered to the reservation (*compare*, *Ammex Warehouse Co. v Procaccino*, 85 Misc 2d 327, *affd* 55 AD2d 535). Therefore, we find it unlikely that defendants will be able to meet their burden of showing that their compliance with these laws is "not reasonably necessary" to prevent fraudulent transactions (*Washington v Confederated Tribes, supra*, at 160).

Mikoll, J. P., Mercure, Crew III and Spain, JJ., concur.

Ordered that the orders are modified, on the law, without costs, by reversing so much thereof as granted defendants' motions to dismiss action Nos. 1, 2 and 3 and dismissed plaintiff's motions to confirm the temporary seizures in action Nos. 1, 2 and 3; defendants' motions to dismiss action Nos. 1, 2 and 3 for lack of subject matter jurisdiction are denied and plaintiff's motions to confirm the temporary seizures in action Nos. 1, 2 and 3 are granted; and, as so modified, affirmed.